## ALLEN v. NEBE et al.
### No. 16248.

Court of Appeal of Louisiana. Orleans.
March 23, 1936.

Gerald Netter, of New Orleans, for appellants.

Blas & Sehrt, of New Orleans, for appellee.

WESTERFIELD, Judge.

This is a suit for damages for physical injuries brought by a tenant against her landlord, in which it is alleged that while the tenant was asleep in her bed a large amount of plaster fell from the ceiling of her bedroom and struck her on her right side, causing a severe injury to her kidney. The amount sued for is $3,008.

The defendant admits the relationship of landlord and tenant, but denies that the plaintiff was injured in the manner set forth in her petition.

There was judgment below awarding plaintiff $500, and defendant has appealed. The plaintiff, answering the appeal, has asked that the judgment be increased to the original amount demanded.

Without reviewing the testimony on the subject, we are convinced, as was the trial judge, that some plaster attached to the ceiling of plaintiff's bedroom in the leased premises did fall and injure her. The evidence is conclusive to that effect.

On the other hand, we believe that the extent of plaintiff's injuries has been grossly exaggerated. The accident occurred on April 14, 1933, somewhere between 6:30 and 8:30 o'clock a. m. A police officer was called in by Daisy Reed, a friend of plaintiff, who caused the injured woman to be conveyed to the Charity Hospital in a taxicab. According to plaintiff's statement, she returned from the hospital and was taken home the same evening by the police officer in his automobile. On both occasions, going to and coming from the hospital, she walked to the conveyance. Thereafter she says that she remained in bed for nineteen days under the treatment of a colored doctor, whose name she did not know, and whom she did not subpœna as a witness in the case. During the time she was in bed she claims that she was constantly urinating blood, and Daisy Reed declared that she urinated a stream of blood. She returned to the hospital on May 3 and again on May 5 and May 9, 16, 18, and 29. On May 29 a urinalysis was made which revealed the presence of blood cells in the urine, but these blood cells were not visible except under a microscope. On a former visit the hospital chart bears a notation "bleeds on urination"; however, it is evident that this is a statement of the patient rather than the result of an examination by the attending physician.

The medical experts who testified inform us that an injury to the kidney severe enough to cause constant bleeding for nineteen days would have incapacitated the plaintiff at once, and that she would not have been able to walk to the taxicab with the police officer, or walk from the hospital to the officer's automobile when leaving there. There is also some doubt as to where the small amount of blood which was found in the urine came from. The plaintiff had been under treatment prior to the date of the injury for bilateral salpingitis, which, we are informed, is an inflammation of both fallopian tubes, and anteflex uterus. She also had cervicitis, which means an inflammation of the cervix, or neck of the womb, and one of the medical experts, Dr. Gessner, was of opinion that the source of the blood in the urine was the congested urethra and not the traumatic injury. In any event, no serious injury to the kidney has been proven with legal certainty.

We cannot understand plaintiff's failure to produce the doctor who attended her during the period in which she claims she was constantly passing blood, or to remember his name, except upon the theory that his testimony would be unfavorable. It is apparent that the trial judge did not believe

plaintiff and her witnesses concerning the extent of her injuries because an award of $500 would be inadequate for a serious kidney trouble such as she claims to have suffered. We believe that even this amount was too much and have concluded to allow her the nominal sum of $250.

For the reasons assigned, the judgment appealed from will be amended by reducing the sum awarded from $500 to $250, and, as thus amended, affirmed, costs of appeal to be paid by plaintiff appellee and of the trial court by defendant appellant.

Amended and affirmed.